## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

HENRY BANKS, III,
  *Plaintiff*,

  v.            No. 3:20-cv-00326 (JAM)

MICHAUD *et al.*,
  *Defendants*.

### INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Henry Banks, III is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed this complaint *pro se* and *in forma pauperis* against numerous DOC officials, primarily alleging a violation of his constitutional rights in connection with his designation to DOC's Security Risk Group ("SRG") program multiple times over recent years. I will allow his due process claim to proceed against some of the defendants but will dismiss his other claims against other defendants.

### BACKGROUND

The DOC has a Security Risk Group ("SRG") program that allows for prisoners who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement. An administrative directive issued by the DOC specifies the procedures for designation of a prisoner to the SRG program and the requirements for a prisoner to progress through five phases of the program before his return to general population.[1]

The following facts are drawn from the allegations in the complaint and from public court filings and are accepted as true only for purposes of this ruling. Banks was sentenced by a Connecticut state court in July 2011 to a term of 52 months of imprisonment. Doc. #1 at 4 (¶ 2);

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6.

*State v. Banks*, Docket No. K10K-CR11-0312981-S (Conn. Super. Ct. July 20, 2011). At some

point in 2014, prison officials designated Banks as a member of a Security Risk Group and

placed him in Phase 1 of the SRG program at MacDougall-Walker Correctional Institution

("MacDougall-Walker"). Doc. #1 at 4 (¶ 1). Banks participated in Phase 1 of the SRG program

for about 18 months until he completed his sentence. *Id.* at 4 (¶ 2).

In November 2015, Banks was readmitted to the DOC as a pretrial detainee after his

arrest on a new criminal charge and was confined at Corrigan-Radgowski Correctional

Institution ("Corrigan-Radgowski"). *Id.* (¶ 3). Defendant Whidden directed officers to place

Banks in a cell in the restrictive housing unit on administrative segregation status pending a

classification hearing. *Id.* at 6 (¶ 7). Banks never participated in a classification hearing or

received a disciplinary report. *Ibid.* Instead, on November 3, 2015, defendants Michaud and

Kelly transferred Banks to MacDougall-Walker to complete Phases 1 and 2 of the SRG program,

a designation that was made solely because he had not completed those phases before he had

discharged from his prior sentence. *Id.* at 9 (¶ 3). Whidden signed off on the order to place Banks

in Phases 1 and 2 of the SRG program. *Id.* at 12 (¶ 2).

From November 2015 until January 2017, Banks remained at MacDougall-Walker to

complete Phases 1 and 2 of the SRG program. *Id.* at 9 (¶ 3). Defendant Rivera was the Unit

Manager of the unit where he was housed. *Ibid.* Rivera subjected Banks to many restrictive

conditions of confinement, including confinement in his cell for 23 hours a day on weekdays and

24 hours a day on weekends, recreation during inclement weather, three showers a week in an

unsanitary shower stall, and no more than three telephone calls a week. *Id.* at 6 (¶ 7). Banks had

no access to a television, congregate religious services, contact visits, or educational or social

2

programming, and endured being hand-cuffed and strip-searched every time he left his cell. *Ibid.* The conditions caused him to experience stress, depression, trauma, and paranoia. *Id.* at 8 (¶ 8).

On January 9, 2017, prison officials transferred Banks to Corrigan-Radgowski to start Phase 3 of the SRG program. *Id.* at 4 (¶ 4). Banks does not allege facts about the conditions of confinement at Corrigan-Radgowski during Phase 3 of the SRG program. In April 2017, Banks was discharged from his sentence of imprisonment. *Ibid.*

On June 7, 2018, Banks was readmitted to Corrigan-Radgowski as a pretrial detainee after his arrest on a new criminal charge. *Id.* at 4 (¶ 5). Banks did not participate in a classification hearing or receive a disciplinary report. *Id.* at 6 (¶ 1). Instead, defendants Michaud and Kelly placed Banks in B-Pod to complete Phase 3 of the SRG program solely because he had not completed that phase before he was discharged from his prior sentence. *Ibid.* Defendants Santiago and Papoosha signed off on the order to place Banks in Phase 3 of the SRG program. *Id.* at 11 (¶ 1). On October 25, 2018, approximately five months after his readmission, Banks posted bond and was discharged again from the DOC. *Id.* at 4 (¶ 5).

On March 25, 2019, Banks was readmitted to Corrigan-Radgowski as a pretrial detainee. *Id.* at 4 (¶ 6). Banks did not participate in a classification hearing or receive a disciplinary report. *Id.* at 6 (¶¶ 1-6). Instead, Michaud and Kelly placed Banks in E-Pod Unit to complete Phase 3 of the SRG program—a designation that was made solely because he had not completed that phase before he was discharged from his prior imprisonment. *Ibid.*

On July 30, 2019, Banks submitted a written request to Michaud to conduct a 90-day review to determine whether Banks posed a security and safety risk. *Id.* at 17, 20. Banks also informed Michaud that he did not receive an individualized assessment during his prior

admissions. *Ibid.* Banks did not receive a reply. *Ibid.* On November 7, 2019, Santiago and

Papoosha conducted an individual assessment of Banks with regard to his placement in Phase 3

of the SRG program. *Id.* at 11 (¶ 2).

On March 11, 2020, Banks filed this federal court complaint. Banks names eleven

defendants in their individual and official capacities: Scott Semple, former Commissioner of

Correction; Edward Maldonado "Lajoie," District Administrator; Antonio Santiago, current

Director of Security; Christine Whidden, former Director of Security; D. Papoosha, current SRG

coordinator; John Aldi, former SRG coordinator; two lieutenants named Michaud and Kelly;

Captain Rivera, Unit Manager of B1-B2 in MacDougal-Walker; Dorian, counselor supervisor;

and Beers, intelligence officer. *See id.* at 1-2. He seeks compensatory and declaratory damages as

well as a declaration that the defendants violated his constitutional rights.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint

against a governmental entity or governmental actors and "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or

fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations

of the complaint must be read liberally to raise the strongest arguments that they

suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading

standard for courts to evaluate the adequacy of allegations in federal court complaints. A

complaint must allege enough facts—as distinct from legal conclusions—that give rise to

plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### Statute of limitations

Banks filed this lawsuit on March 11, 2020. His constitutional claims pursuant to 42 U.S.C. § 1983 are subject to a three-year statute of limitations. *See, e.g., Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Accordingly, the statute of limitations presumptively bars Banks' claims to the extent that they are based on conduct that occurred prior to three years before he filed this lawsuit—that is, prior to March 11, 2017.

Although the statute of limitations is ordinarily an affirmative defense that must be asserted by a defendant, a district court may "dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted.'" *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (court may dismiss prisoner complaint based on statute of limitations defense that appears on face of the complaint). Here, in the absence of any apparent grounds for tolling, I conclude that the statute of limitations bars Banks' action to the extent he seeks relief for alleged wrongs occurring prior to March 2017.

### Due Process

The Due Process Clause of the Fourteenth Amendment protects both a right to

"substantive" due process and "procedural" due process. *See County of Sacremento v. Lewis*, 523 U.S. 833, 845-46 (1998).[2] For either type of due process claim, a prisoner must plausibly allege at the outset that he was deprived of a property or liberty interest. *See Baez v. Pinker*, 673 Fed. App'x. 50, 52 (2d Cir. 2016).

If a sentenced prisoner claims a deprivation of a liberty interest related to his designation to a restrictive housing unit, the prisoner generally must allege facts to show that the restrictive terms of confinement amounted to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, in *Sandin*, the Supreme Court concluded that a sentenced prisoner who was subject to a disciplinary term limited to only 30 days confinement in restrictive housing did not sustain an atypical and significant hardship to constitute a deprivation of a liberty interest that would be subject to protection under the Due Process Clause. *Id.* at 486.

Following *Sandin*, the Second Circuit has explained that the "[f]actors relevant to determining whether [a sentenced prisoner] endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal citations and quotations omitted). The Second Circuit has further observed that "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133

---

[2] Although Banks alleges due process claims under the Fifth Amendment, he also alleges due process claims under the Fourteenth Amendment, and I consider only the Fourteenth Amendment due process claims in view that the protections are co-extensive and that the Fifth Amendment does not apply to the States except by way of incorporation through the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161 (2002).

(2d Cir. 2009) (*per curiam*).

Importantly, the heightened *Sandin* standard of whether a sentenced prisoner has been subject to an atypical and significant hardship does not apply to pretrial detainees who claim that they have been deprived of a liberty interest. *See Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001). That is because "a state's authority over pretrial detainees is limited by the Constitution in ways that the treatment of convicted persons is not." *McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012). Thus, for example, a pretrial detainee has a constitutional right to be free from conditions of confinement that amount to punishment, because the government has no right to punish a pre-trial detainee prior to an adjudication of guilt in accordance with due process of law. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

If a sentenced prisoner or a pretrial detainee plausibly alleges the deprivation of a liberty interest, then procedural due process requires that prison officials use fair procedures before engaging in any deprivation of a liberty interest. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). The case law distinguishes between the procedures that are required for the use of restrictive conditions of confinement for disciplinary purposes as distinct from administrative management or security purposes. *See Benjamin*, 265 F.3d at 190. For disciplinary segregation, a prisoner must receive written notice of the disciplinary charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action that has been taken, and some ability to present witnesses and evidence in his defense. *See ibid.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974)).

For administrative segregation, less is required; a prisoner must merely receive some notice of the basis for restrictive terms of confinement and an opportunity to present his views.

7

*See ibid.* (citing *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)). The opportunity of a prisoner to present his views may be provided after the detention begins but must take place within a reasonable time, and the prisoner must also receive periodic review of an administrative detention to ensure that this type of detention is not used as a pretext for indefinite restrictions that no longer serve their purpose. *See Hewitt*, 459 U.S. at 467-68, 477; *see also Williamson v. Stirling*, 912 F.3d 154, 173-77 (4th Cir. 2018) (discussing legal standards governing due process claims by convicted prisoner and pretrial detainees with respect to restrictive terms of confinement).[3]

Apart from these protections of procedural due process, pretrial detainees have rights to substantive due process.[4] In general, substantive due process protects pretrial detainees from restrictive conditions of confinement that are imposed for a prohibited punitive purpose or that are otherwise arbitrary and not reasonably related to the lawful grounds for imprisonment. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017)

In the context of a pretrial detainee's claim against restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[ ] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Id.* at 56. Put differently, "[a]lthough prison officials are to be afforded deference in matters of institutional security, such

---

[3] Many cases involve both administrative and disciplinary segregation—where, for example, a prisoner who is alleged to have engaged in a disciplinary violation is subject to immediate administrative segregation pending a disciplinary hearing. *See, e.g., Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016). For such cases a court must consider the administrative and disciplinary grounds separately and in light of the prisoner's status as a convicted prisoner or pretrial detainee.
[4] For convicted prisoners, a challenge to the substantive conditions of confinement is ordinarily addressed under the Eighth Amendment rather than under the substantive component of the Due Process Clause. *See, e.g., Graham v.*

deference does not relieve officials from the requirements of due process or permit them to institute restrictive measures on pretrial detainees that are not reasonably related to legitimate governmental purposes." *Id.*

In *Almighty Supreme Born Allah*, the Second Circuit concluded that prison officials violated due process when they placed a pretrial detainee in administrative segregation "solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57. Additionally, the Second Circuit made clear that substantive due process also applies to the conditions imposed on the detainee, which must be reasonably related to a legitimate government purpose, such as institutional security. *See id.* at 55. The Second Circuit raised questions about whether certain conditions "were reasonably related to the ostensible goal of prison security," including solitary confinement for 23 hours per day, showering in leg irons and wet underwear, no programming or counseling therapy, and particularly strict limits on visits, phone calls, and mail. *See id.* at 58; *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (discussing general conditions of confinement requirements to provide food, clothing, and shelter for pretrial detainees under the Fourteenth Amendment).

In light of all these standards, I conclude that Banks has alleged a plausible due process claim to the extent that he has alleged due process violations that are within the statute of limitations period. As described in detail above, he alleges that when he was admitted to DOC as a pretrial detainee in June 2018 and March 2019 he was automatically assigned by defendants

---

*Connor*, 490 U.S. 386, 394-95 & n.10 (1989).          9

Michaud, Kelly, Santiago, and Papoosha to resume Phase 3 of the SRG program which he had not completed during prior terms of imprisonment. A fair reading of his complaint is that he was automatically assigned to complete the SRG program on the basis of his prior designation to the SRG program and without any individualized consideration whether continuing designation to the SRG program was appropriate. This is precisely what the Second Circuit ruled in *Almighty Supreme Born Allah* to be a violation of due process. *See also Johnson v. King*, 2019 WL 6770043, at *6 (D. Conn. 2019) (noting how the rationale of *Almighty Supreme Born Allah* applies to the SRG program). Although it is unclear whether the conditions of confinement in Phase 3 were of the severe nature of those described in *Almighty Supreme Born Allah* (and as severe as Banks alleges they were in Phases 1 and 2 of the program), it is enough for initial pleading purposes that Banks has alleged that more restrictive terms of confinement were imposed on him as a pretrial detainee upon re-admission to DOC in June 2018 and March 2019 and without individualized consideration of whether these terms continued to be warranted. Accordingly, I will allow Banks' due process claims against Michaud, Kelly, Santiago, and Papoosha to proceed.

### *First Amendment retaliation*

Banks alleges that Whidden, Santiago, Aldi, and Papoosha retaliated against him in violation of his First Amendment rights when he was placed in the SRG program. Doc. #1 at 11-12. In order to establish a First Amendment retaliation claim, a prisoner must show that: (1) he engaged in conduct that is protected under the First Amendment (such as the exercise of his right to free speech); (2) an official took adverse action against him; and (3) there was a causal connection between the protected conduct and the adverse action. *See Brandon v. Kintner*, 938

10

F.3d 21, 40 (2d Cir. 2019).

In a conclusory fashion, Banks asserts that Whidden and Aldi created a custom under which unconstitutional acts occur, and he alleges that this amounts to retaliation for "associations" protected by the First Amendment. Doc. #1 at 11 (¶ 5). Banks also asks that the Court infer retaliation from the policy created by Whidden and Aldi pursuant to Administrative Directive 6.14 under which their subordinates automatically placed him in the SRG program each time he was readmitted to the Department of Correction as a pretrial detainee solely because he had not completed all phases of the SRG program during prior periods of confinement. *Id.* (¶ 6). This alleged retaliation bears no relation to the exercise of First Amendment rights. Nor does Banks allege any facts to suggest that Santiago or Papoosha engaged in retaliation against his First Amendment rights. Accordingly, I will dismiss Bank's First Amendment retaliation claim.

### *Named defendants not alleged to be personally involved*

Banks lists several defendants—Semple (misspelled as "Simple"), Beers, Dorian, and Maldonado—but without alleging any facts in the body of the complaint about what these defendants did wrong. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Accordingly, I will dismiss the claims against defendants Semple, Beers, Dorian, and Maldonado.

### *Official capacity claims and declaratory relief*

11

Banks has sued all defendants in their individual and official capacities for punitive and compensatory damages as well as a declaratory judgment that the defendants violated his constitutional rights. Doc. #1 at 1, 14. State officials sued in their official capacities under 42 U.S.C. § 1983 are immune from suit for damages pursuant to the Eleventh Amendment. *See Pennhurst State Sch. & Hops. v. Halderman,* 465 U.S. 89, 100-02 (1984); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). Likewise, they are immune from declaratory relief to the extent a declaration is sought that they have previously violated the law. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Accordingly, I will dismiss the official capacity claims for damages and for a declaratory judgment.

## CONCLUSION

The Court enters the following orders:

(1)   Banks' due process claims arising from his designation to the SRG program in in June 2018 and March 2019 may proceed against defendants Santiago, Papoosha, Michaud, and Kelly in their individual capacities for monetary damages. All other claims against other defendants are DISMISSED on the ground that they are barred by the statute of limitations or that Banks has not alleged plausible grounds for relief.

**(2)**   If Banks believes in good faith that he can allege additional facts to sustain liability against any defendant, then he may file an amended complaint by **January 8, 2021.**

(3)   The Clerk shall verify the current work addresses for Santiago, Papoosha, Michaud, and Kelly with the DOC Office of Legal Affairs, mail a waiver of

service of process request packet containing the complaint of those defendants at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by no later than the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4)    All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5)    The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6)    The discovery deadline is extended to **six months (180 days)** from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must sent to plaintiff with a copy of this Order. The order can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7)    The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order.

(8)     Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive

motion (*i.e.*, a motion to dismiss or a motion for summary judgment) within

**twenty-one (21) days** of the date the motion was filed. If no response is filed, or

the response is not timely, the Court may grant the dispositive motion without

further proceedings.

(9)     If the plaintiff changes his address at any time during the litigation of this case,

Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do

so can result in the dismissal of the case. Plaintiff must give notice of a new

address even if he is incarcerated. He should write PLEASE NOTE MY NEW

ADDRESS on the notice. It is not enough to just put the new address on a letter

without indicating that it is a new address. If plaintiff has more than one pending

case, he must indicate all of the case numbers in the notification of change of

address. Plaintiff must also notify defendants or defense counsel of his new

address.

(10)    Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with

the Court. Plaintiff is advised that the Program may be used only to file with the

Court. As discovery requests are not filed with the Court, the parties must serve

discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven, Connecticut this 7th day of December 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

14